**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JONATHAN DAVID SMITH, SR.                    *

Petitioner                                               *

v                                                            *          Civil Action No. PJM-10-2007

JOHN S. WOLFE, et al.                              *

Respondents                                           *
                                                         ***

## <u>MEMORANDUM OPINION</u>

After staying the above-captioned case to permit Petitioner an opportunity to exhaust state remedies with respect to one claim raised in the Petition for Writ of Habeas Corpus, this case was reopened and Respondents supplemented the Answer.  ECF No. 21, *see also* ECF No. 5 at Ex. 3, p.1.  The facts established at trial were set forth in full in the Court's previously issued Memorandum Opinion and will not be restated here.  ECF No. 11.  The procedural history of the case, which is the dispositive issue before the Court, follows.

Petitioner Jonathan David Smith ("Smith") was tried by a jury in the Circuit Court for Talbot County, Maryland, and found guilty of the first degree felony murder of Adeline Wilford and daytime housebreaking.  ECF No. 5 at Ex. 1 and 4.  Following the verdict, Smith filed a motion for new trial asserting that exculpatory DNA evidence had been withheld.  *Id.* at Ex. 4. The motion was denied without a hearing on April 30, 2001, and Smith was sentenced to life imprisonment.  *Id.* at Ex. 2, p. 1.

In Smith's direct appeal to the Maryland Court of Special Appeals he alleged the trial judge erred by denying his motion for new trial; excluding as irrelevant questions regarding the

informant's[1] motive to testify; and refusing defense counsel's request to reinstruct the jury on

"mere presence at scene" after the jury asked if it was sufficient to support a verdict of guilty on

felony murder.  ECF No. 5 at Ex. 2, p. 1.   On January 12, 2002, the appellate court vacated the

trial court's order denying the motion for new trial and remanded the case for a hearing on the

motion.  *Id.*  The convictions were otherwise affirmed in the unreported opinion.  Smith appealed

the adverse rulings of the Court of Special Appeals to the Court of Appeals.   *Id.* at Ex. 3.   On

November 4, 2002, the Court of Appeals affirmed the decision of the Court of Special Appeals.

*Id.*

On remand, the Circuit Court for Talbot County held a hearing on Smith's motion for

new trial on June 3, 2003, as required by the Court of Special Appeals' decision vacating and

remanding the previous denial of the motion.  At the hearing, Smith's counsel did not argue the

DNA evidence claim originally asserted, but instead offered evidence to support a claim that

Smith had been set-up by his Aunt, Beverly Haddaway, and his co-defendant, Ray Andrews.

The evidence offered was a conspiracy theory involving Haddaway, Andrews, Grayson Eckel

and Haddaway's daughter.  Evidence of the alleged conspiracy included the fact that Eckel had

represented Haddaway in a civil suit to collect the additional $15,000 in reward money.  Counsel

also argued that "'if there were a scheme' to frame [Smith] for the reward money, 'there would

really be no better way to implement that scheme than to have the same lawyer representing' Ms.

Haddaway and Mr. Andrews, because 'one single lawyer' would 'be able to orchestrate that.'

ECF No. 5 at Ex. 4, p. 7.  Counsel further claimed that even though Andrews had denied there

---

[1] Beverly Haddaway, Smith's Aunt, wore a hidden recording device at the request of police and obtained incriminating statements from Smith.  Smith attempted to argue that his Aunt's motive to convince him to confess was a potential financial windfall from reward money and an alleged scheme to deprive Smith of an inheritance. ECF No. 5 at Ex. 3, p. 5.  Haddaway contacted police after a reward was offered for information leading to the arrest and conviction of Wilford's killer totaling $25,000.

was a deal between himself, Haddaway and Eckel, the representation by Eckel of both a defendant and a witness in criminal cases of the same subject matter "has left a stink on the case . . . and that stink unfortunately can't be washed away." *Id.* at p. 8. The trial court denied the motion for new trial, because in its view, "[t]he fundamental fairness of [Smith's] trial was not compromised." *Id.*

Smith appealed the denial of the motion to the Court of Special Appeals which affirmed the trial court's decision on November 4, 2004,[2] noting that granting a new trial remains within the discretion of the trial court. ECF No. 5 at Ex. 4, p. 9. The Court of Special Appeals noted, with approval, the trial court's reasoning:

> [Smith's] counsel suggests that Eckel was the instrumentality by which Haddaway influenced Andrews to give false testimony. However, the fact that Eckel represented the interests of Andrews, Janda, and Haddaway at any given time proves only that Eckel exercised incredibly bad judgment in avoiding conflicts of interest, not that he exercised any influence over Andrews on behalf of Haddaway. . . All that the court has before it is the conjecture of [Smith's] counsel, who is trying to help Smith in a situation in which, if the conspiracy theory were true, [Smith] refuses to help himself. Therefore, the court must find as the jury found, i.e., that the theory of [Smith's] counsel, while possible, is improbable and unsupported by any evidence.

*Id.* Smith did not seek further appellate review on this issue.

Smith filed a post-conviction petition on September 28, 2005, in the Circuit Court for Talbot County. ECF No. 5 at Ex. 5. He alleged trial counsel was ineffective for failing to prevail on the motion to suppress evidence from the wiretap conversation, failing to obtain an adequate translation mechanism to compensate for his hearing impairment,[3] and failing to

---

[2] The court's mandate issued December 6, 2004. ECF No. 5 at Ex. 4.

[3] An audiologist testified on behalf of Smith at the post-conviction hearing that he has a "severe to profound hearing loss" and that "with one hearing aid and with the best amplification possible, Smith could only hear 10 – 20% of the

convey a plea offer.  In addition Smith claimed the police denied him access to an attorney when he was questioned, the trial court imposed an improper sentence, and the trial court failed to adequately inquire about his hearing impairment.  *Id.* at Ex. 7.

A post-conviction hearing was held on August 1, 2008.  The Circuit Court denied relief in a written opinion dated April 13, 2009.  ECF No. 6 at Ex. 7.  Smith sought appellate review of the post-conviction court's decision via an application for leave to appeal filed with the Court of Special Appeals.  *Id.* at Ex. 8.   In an unreported opinion dated June 9, 2010, the Court of Special Appeals denied Smith's application for leave to appeal.  The mandate was issued on July 9, 2010.  *Id.* at Ex. 9.

In the instant Petition for Writ of Habeas Corpus, Smith alleges: (1) the trial court denied him his rights under the Americans with Disabilities Act; (2) the trial court erred when it did not provide either an interpreter or a telemonitor to Smith for purposes of keeping track of the proceedings; (3) the post-conviction court erred when it did not allow counsel to file a supplemental petition; and (4) the wiretap used to record conversations between Smith and Haddaway was illegal under Maryland law.  ECF No. 1 at pp. 8 – 9.  None of the claims raised had been exhausted in state court.

Smith argued that his claims should nevertheless be heard because he was prejudiced by the trial court when he was not provided with a telemonitor[4] so that he could understand what was being said at his trial.  ECF No. 9 at p. 2.  He explains that his hearing disability makes it

---

proceeding."  The audiologist acknowledged on cross examination that Smith reads lips, but does not know sign language.  ECF No. 5 at Ex. 7, p. 8.

[4] Smith appears to abandon his claim that he should have been provided with an interpreter.  It was established at trial that he does not know or understand sign language. ECF No. 5 at Ex. 7, p. 10.

impossible for him to understand what is being said unless the speaker is facing him. Additionally he states that words spoken must be repeated back to him in order to insure he has properly understood what was being said at the time.[5]   At trial Smith could not always see the speaker and therefore did not always know what was being said.   Had a telemonitor been provided during trial, Smith asserts he could have been able to assist in his defense because he would have known what was actually being said and by whom.   *Id.*   Smith points out that the post-conviction court recognized the need for a telemonitor and provided it to him during the post-conviction hearing.   Smith further states that he did not exhaust the claims raised herein because he was advised by counsel that he could not raise the claims in state court.

This Court stayed review of Smith's claims to permit him to raise the claims in a second post-conviction petition filed with the Circuit Court for Talbot County.   Specifically, this Court observed that,

> [T]he claims raised by Smith cannot be rejected as plainly meritless.   There is no unfounded stretch of the facts or law involved in his assertion that he is profoundly hearing impaired and he could not effectively participate in aiding in his own defense.   His failure to raise these claims in post-conviction do not appear to be an attempt on his part to bypass the state courts or to thwart the purposes of the exhaustion requirements of 28 U.S.C. §2244.

ECF No. 11 at p. 9.

In his Motion to Reopen this case, Smith states that he filed a Motion to Reopen Closed Post-Conviction Proceedings on December 27, 2011, which was denied on January 18, 2012. ECF No. 16 at p. 1. In his Motion to Reopen Post-Conviction Proceedings, Smith raised two

---

[5] In a letter dated July 1, 2003, the doctor who provided Smith with his hearing aid, J. Michael Canary, wrote that Smith "requires the most powerful hearing aids made and then can only understand 50 – 60% of oral speech."   ECF No. 9 at p. 5.   He further states that "he depends on a combination of his high power hearing aids and lip reading to understand verbal communication" and even under the "best of circumstances" Smith "will still misunderstand 15 – 25% of the spoken word." *Id.*

claims: that his rights under the American's with Disabilities Act were violated by the trial court; and that his rights under the Privacy Act were violated by the Maryland state police. ECF No. 14 -2.  He asserts that this attempt satisfies the exhaustion requirement and seeks substantive review of his claims.  ECF No. 16.  Smith did not file an application for leave to appeal the denial of his motion to reopen.   ECF No. 21 at Ex. 16.

When filing a federal habeas corpus application under 28 U.S.C. § 2254, a petitioner must show that all of his claims have been presented to the state courts.  28 U.S.C. §2254(b) and (c); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider it. For a person convicted of a criminal offense in Maryland this may be accomplished either on direct appeal or in post-conviction proceedings.

As Petitioner was previously advised, to exhaust a claim on direct appeal in non-capital cases, it must be raised in an appeal, if one is permitted, to the Maryland Court of Special Appeals and then to the Maryland Court of Appeals by way of a petition for writ of certiorari. *See* Md. Cts. & Jud. Proc. Code Ann., §12-201 and §12-301.

If an appeal of right is not permitted, as in cases where a guilty plea is entered, exhaustion can be accomplished by filing an application for leave to appeal to the Court of Special Appeals.  Md. Cts. & Jud. Proc. Code Ann., §12-302(e).  If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted.  Md. Cts. & Jud. Proc. Code Ann., §12-202.  However, if the application is granted but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals. *Williams v. State*, 292 Md. 201, 210-11 (1981).

6

To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and in an application for leave to appeal to the Court of Special Appeals.  Md. Crim. Proc. Code Ann. §7-109.  If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted.  Md. Cts. & Jud. Proc. Code Ann., §12-202.  However, if the application is granted but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals. *Williams*, *supra*.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[6]   *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.   "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488).   Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.[7]   *See Schlup v. Delo*, 513 U. S. 298, 314 (1995).

In the instant case, Smith was provided an opportunity to reopen post-conviction proceedings for consideration of the claims he raised which were not exhausted.   When his motion to reopen was denied, he failed to file an application for leave to appeal the denial and

---

[6]  Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.   *See Murray v. Carrier*, 477 U.S. at 496.   "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).   Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence.   *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

[7]  With regard to Smith's hearing impairment, the post-conviction court observed that:

> [E]vidence of the court's recognition, and accommodation of Smith's hearing impairment, as well as Mr. Smith's active participation in the trial are replete throughout the transcript. As a preface no where in the transcript or during the course of the proceeding was it ever suggested that Smith was incompetent to stand trial, or otherwise had any mental deficiency that prevented him from understanding the proceedings or participating in his defense.

ECF No. 21 at Ex. 7.   A lengthy examination of Smith's participation in the trial followed.   Thus, this Court is satisfied that a fundamental miscarriage of justice will not result and that Smith would not prevail on his claim if the merits were reached.   *See Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 – 87 (2011) ("state court's ruling on the claim presented in federal court was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.")

offers no objective factor preventing him from doing so.  In response to the procedural default claim asserted by Respondents, Smith claims he was led to believe the claims were exhausted; and that the State withheld DNA reports at the time of trial which was prejudicial to him. ECF No. 23.  He attaches copies of DNA reports and a portion of a letter from the Innocence Project which suggests that DNA from palm prints collected at the murder scene which did not match Smith's prints or his co-defendants might be tested for DNA.  *Id.*  The suggestion that there may be some DNA evidence that might exculpate Smith does not suffice to challenge the sufficiency of the evidence underlying his convictions. "To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538,  (1998).  The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *See Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir.1999).   To invoke the actual innocence exception to the procedural default doctrine, a defendant "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.  Nor does Smith's misunderstanding of the law regarding exhaustion serve as a valid reason to find cause and prejudice.  Thus, the merits of Smith's claims may not be considered by this Court and the Petition for Writ of Habeas Corpus must be dismissed.

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rouse v. Lee,* 252 F.3d 676, 684 (4th Cir.2001)

(quoting *Slack v. Daniel,* 529 U.S. 473, 484 (2000)).  Neither ground obtains in the present case.

Accordingly, a certificate of appealability shall not issue.

A separate Order follows.


                                         _____/s/_____
                                                  PETER J. MESSITTE
April 11, 2013                        UNITED STATES DISTRICT JUDGE